UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALFRED G. HENRY, *pro se*,

                             Plaintiff,

      -against-

ROBERT A. MCDONALD, Secretary of the
Department of Veterans Affairs,

                             Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-CV-4030 (DLI) (SJB)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Alfred G. Henry ("Plaintiff") filed this action against Robert A. McDonald, Secretary of the Department of Veterans Affairs ("Defendant"), among others,[1] for terminating his employment based on his race, color, national origin and sex, hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq*. *See generally*, Complaint ("Compl."), Dkt. Entry No. 1. Plaintiff also alleges that Defendant terminated his employment, based on his mental disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq*. *Id*. at 1, 3-5.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for summary judgment, seeking dismissal of this action in its entirety. *See*, Def.'s Mot. for Summ. J. ("Def.'s Mot."), Dkt. Entry No. 74-2. Plaintiff opposed the motion. *See*, Plf.'s Opp'n to Def.'s Mot. ("Plf.'s Opp'n"), Dkt. Entry No. 66. Defendant replied. *See*, Def.'s Rep. in Supp. of Def.'s Mot. ("Def.'s Rep."), Dkt. Entry No. 78. For the reasons set forth below, Defendant's motion for summary judgment is granted and this case is dismissed in its entirety.

---

[1] By stipulation, Plaintiff dismissed from this action Defendants Department of Veterans Affairs, Adam Wolkin, David Matalon, Regina Pierce, Kyonghee Hanson, Yasmeen Benjamin, and Ryan Gill. *See*, Dkt. Entry No. 37-1.

## BACKGROUND

**I.   Plaintiff's Employment**

Plaintiff is a military veteran, although the record does not specify where he served. Plf.'s Rule 56.1 Statement ("Plf.'s 56.1"), Dkt. Entry No. 67, at 17. He is an African American male of Jamaican origin. Def.'s Rule 56.1 Statement ("Def.'s 56.1"), Dkt. Entry No. 74-1, at ¶ 1. On or about November 4, 2012, Plaintiff was hired by the Department of Veterans Affairs ("VA") as a Medical Support Assistant in the Post-Traumatic Stress Disorder Clinic (the "Clinic") of the VA New York Harbor Health Care System in Brooklyn, New York, which serves military veterans. *Id.* ¶ 2. His employment was conditioned upon successful completion of a one-year probationary period. *Id.* ¶ 4. Regina Pierce ("Pierce") was Plaintiff's supervisor and served as the Administrative Officer for Mental Health Services at the VA. *Id.* ¶¶ 6, 8. Kyonghee Hanson ("Hanson") was the Lead Program Support Assistant responsible for the daily operations of the clerical staff, including Plaintiff. *Id.* ¶ 5. Hanson did not have supervisory authority and reported to Pierce. *Id.* ¶¶ 6-7. Pierce reported to Dr. Adam Wolkin ("Wolkin"), the Associate Chief of Staff for Mental Health at the VA. *Id.* ¶ 8.

On November 7, 2012, Pierce reviewed with Plaintiff his job responsibilities and a performance plan. *Id.* ¶ 11. Plaintiff's duties included performing clerical work and support services for the mental health practitioners, scheduling and canceling patient appointments, checking in patients when they arrived, and answering the phone. *Id.* ¶¶ 9, 12. He was required to interact frequently with Clinic practitioners, staff members, and patients, and was expected to behave professionally, courteously and efficiently. *Id.* ¶¶ 10, 12.

## II.   Plaintiff's Performance Issues

On February 14, 2013, Pierce met with Plaintiff to discuss numerous complaints she had received from Clinic staff, including Dr. Yasmeen Benjamin ("Benjamin"), a psychologist, and Dr. David Matalon ("Matalon"), the Clinic Director, about Plaintiff's job performance. *Id.* ¶¶ 14, 18, 26. Among other things, Pierce reviewed Plaintiff's: (1) numerous scheduling errors; (2) failure to answer his work telephone regularly; and (3) affirmations to staff members that he had completed his assigned tasks when he had not. *Id.* ¶¶ 22, 25-26. On January 16, 2013, Plaintiff emailed Pierce and others that he was "still mak[ing] some mistake[s]" and apologized. Exhibit 21 to Affidavit of James R. Cho ("Cho Aff.") at 239, Dkt. Entry No. 76-1. On February 15, 2013, Plaintiff sent an email to Pierce and others, stating that he would take "constructive criticism" and work to improve his job performance. Exhibit 22 to Cho Aff. at 241, Dkt. Entry No. 76-1.

On February 25, 2013, Pierce solicited feedback from Clinic staff members about Plaintiff's job performance as part of his ninety-day placement evaluation. Def.'s 56.1 ¶ 28. Matalon emailed Pierce that Plaintiff's accuracy and efficiency in scheduling appointments were "very poor" and "sorely inadequate[,]" despite repeated attempts by Clinic staff to correct him. Exhibit 6 to Affidavit of Regina Pierce ("Pierce Aff.") at 41, Dkt. Entry No. 75. Matalon concluded that "it appears [Plaintiff] does not have the necessary skill set to adequately fill this particular position as clerk of the PTSD Clinic." *Id.*

Benjamin also emailed Pierce to report that Plaintiff had "significant efficiency and accuracy problems" with scheduling and canceling appointments, and Plaintiff would affirm falsely that he had completed his assigned tasks. Exhibit 7 to Pierce Aff. at 43, Dkt. Entry No. 75. Benjamin added that Plaintiff would become "combative" when she tried to give him corrective feedback, and would laugh, tease and joke with patients while other patients were waiting to check

3

in for appointments. *Id.* Benjamin concluded that Plaintiff was "defiant, inappropriate with veterans and staff, lack[ed] time management and problem-solving skills, and [wa]s inefficient at performing the tasks that are required of him in the PTSD program." *Id.*

On March 8, 2013, Pierce met with Plaintiff to discuss his performance and competence as part of his ninety-day placement evaluation. Def.'s 56.1 ¶ 39. Pierce rated Plaintiff's performance "unsatisfactory" in his follow-up evaluation form and noted that he was not competent to perform his assigned duties. Exhibit 8 to Pierce Aff. at 47, Dkt. Entry No. 75. Pierce wrote that Plaintiff was "[r]esistant to supervision . . . combative with providers[,] makes various excuses for errors[,]" and he "lacks time management skills [and] problem solving skills, [is] inefficient in scheduling, [and] . . . informs provider[s] that requested task[s are] completed when not." *Id.* at 45-46. Pierce also reviewed with Plaintiff his specific competence assessment form, in which she wrote that he needed improvement in "ethics, time management, problem solving skills, organizational skills, customer service skills, training and practice." Def.'s 56.1 ¶ 44; Exhibit 9 to Pierce Aff. at 51, Dkt. Entry No. 75. Plaintiff signed the specific competence assessment form. Def.'s 56.1 ¶ 46.

On May 23, 2013, Pierce met with Plaintiff as part of his six-month performance evaluation. *Id.* ¶ 51. Pierce discussed additional complaints she had received, including that Plaintiff had made an inappropriate comment about the fit of Benjamin's outfit, and was abrupt and discourteous with a patient. *Id.* ¶¶ 55, 57. Plaintiff responded that it was "common practice" for a veteran to complain because "every vetera[n] think[s] they are special." *Id.* ¶ 56; Exhibit 6 to Cho Aff. at 141, Dkt. Entry No. 76-1. Pierce explained that Benjamin found Plaintiff's comment about her clothing inappropriate and advised Plaintiff to refrain from making similar comments in the future. Def.'s 56.1 ¶ 59. Pierce also addressed Plaintiff's inaccuracy and inefficiency in

4

scheduling patients' appointments and noted on Plaintiff's performance appraisal form that he "[n]eed[ed] improvement to be [f]ully [s]uccessful or better." *Id.* ¶¶ 53-54; Exhibit 3 to Pierce Aff. at 32, Dkt. Entry No. 75.

On August 26, 2013, Wolkin submitted to Deborah Innella ("Innella"), the Chief of Human Resources, a written request that Plaintiff be terminated. Def.'s 56.1 ¶ 63. Wolkin wrote that Plaintiff's "performance, conduct, [and] general traits of character" were "unsatisfactory" and he was "unable to meet the needs of the VA." Exhibit 13 to Pierce Aff. at 60, Dkt. Entry No. 75. In support of the termination request, Wolkin cited Plaintiff's disrespectful conduct, failure to follow scheduling procedures, failure to act on appointment requests in the required time frame, and inability to communicate effectively and professionally with staff and patients. *Id.*

### III. Plaintiff's Termination

On September 16, 2013, Pierce conducted a ten-month probationary review of Plaintiff's job performance. Def.'s 56.1 ¶ 66. She concluded that he should not be retained because his performance was unsatisfactory and he did not have the necessary skill set to perform his role. *Id.* ¶¶ 66-69. Pierce consulted with Matalon and Wolkin, each of whom agreed with Pierce's determination. *Id.* ¶¶ 70-72, 77-79. On September 30, 2013, Pierce met with Plaintiff to discuss his ongoing performance issues. *Id.* ¶ 74. As he began to receive negative feedback from Pierce, Plaintiff contemplated suicide. *Id.* ¶ 75; Exhibit 6 to Cho Aff. at 133, Dkt. Entry No. 76-1. Plaintiff postponed the remainder of the meeting and sought immediate medical attention. Exhibit 6 to Cho Aff. at 134, Dkt. Entry No. 76-1. On October 1, 2013, Plaintiff checked himself in to the psychiatric ward of New York Harbor Healthcare System, Manhattan Campus, out of concern that he might hurt himself or others. Exhibit 2 to Cho Aff. at 85, 90, Dkt. Entry No. 76-1. Plaintiff remained a patient there from October 1, 2013 to October 9, 2013. *Id.* at 85.

5

The parties dispute Pierce's knowledge of Plaintiff's mental condition and the timing of Plaintiff's termination. Plaintiff alleges Pierce knew about his mental condition on October 1, 2013 and on October 10, 2013 when she informed him that he was terminated and handed him his termination letter. Exhibit 2 to Cho Aff. at 87, 89, Dkt. Entry No. 76-1. Defendant claims Pierce did not know of Plaintiff's mental condition, and Pierce informed him that he was terminated when she handed him his termination letter on October 15, 2013. Def.'s 56.1 ¶¶ 80-81, 85. Plaintiff's termination letter, dated October 11, 2013, was signed by Ryan Gill ("Gill"), the Acting Chief of Human Resources Management. Exhibit 16 to Pierce Aff. at 66-68, Dkt. Entry No. 75.

## IV.    Administrative Proceedings

Following his termination, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor. Def.'s 56.1 ¶ 87. On December 13, 2013, the VA's Office of Resolution Management ("ORM") issued Plaintiff a right to file an administrative complaint of employment discrimination. *Id.* ¶ 88; Exhibit 11 to Cho Aff., Dkt. Entry No. 76-1. On December 21, 2013, Plaintiff filed his administrative complaint ("EEO Complaint") with the ORM. Def.'s 56.1 ¶ 89; Exhibit 12 to Cho Aff., Dkt. Entry No. 76-1. The ORM accepted Plaintiff's EEO Complaint, which concerned whether Pierce terminated Plaintiff on the grounds of his national origin, race, color, sex, and disability. Def.'s 56.1 ¶ 90; Exhibit 14 to Cho Aff., Dkt. Entry No. 76-1. The ORM did not accept Plaintiff's hostile work environment claim because he did not raise this claim in his initial contact with the EEO counselor. *Id.* ¶ 91.

On August 21, 2014, Defendant moved for summary judgment to dismiss Plaintiff's EEO Complaint and, on September 12, 2014, Plaintiff responded. *Id.* ¶ 92. The Administrative Law Judge ("ALJ") of the Equal Employment Opportunity Commission ("EEOC") allowed Plaintiff to amend his EEO Complaint to include a hostile work environment claim.

On March 25, 2015, the ALJ granted Defendant's motion for summary judgment and dismissed Plaintiff's EEO Complaint in its entirety. *Id.* ¶ 93. The ALJ found that Plaintiff had failed to establish a prima facie case of discrimination under Title VII based on Plaintiff's race, color, sex, and national origin and, even if Plaintiff had established a prima facie case, Defendant had articulated a legitimate non-discriminatory reason for terminating Plaintiff due to his unsatisfactory work performance. Exhibit 1 to Cho Aff. at 35-36, Dkt. Entry No. 76-1. The ALJ dismissed Plaintiff's hostile work environment claim on the ground that he had not shown he was discriminated against based on a protected characteristic. *Id.* at 35. The ALJ also dismissed Plaintiff's disability discrimination claim because he had not shown that Defendant was aware of his alleged mental disability or that he requested a reasonable accommodation. *Id.* On April 9, 2015, the VA's Office of Employment Discrimination Complaint Adjudication ("OEDCA") accepted the ALJ's decision and issued Plaintiff a right to sue letter. *Id.* at 24-26. Plaintiff then commenced this action on June 24, 2015.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

7

If the moving party meets its initial burden of demonstrating the absence of genuine issues of material fact, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation[.]" *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Instead, the nonmoving party must affirmatively set out facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 250. "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Additionally, there are special considerations for district courts in reviewing claims of employment discrimination against the threat of summary judgment. Where direct evidence of an employer's discriminatory intent is not readily discernible, district courts must scrutinize carefully the available evidence for "circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Indeed, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . [t]here must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

Nevertheless, these special considerations do not reduce the pleading requirements imposed upon plaintiffs that are necessary to defeat a summary judgment motion. *See, Baldwin v. Goddard Riverside Community Ctr.*, 53 F. Supp.3d 655, 667 (S.D.N.Y. 2014). In order to serve

the salutary purposes of summary judgment, a plaintiff in a discrimination case "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [h]e must come forth with evidence sufficient to allow a reasonable jury to find in h[is] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (internal citation and quotation marks omitted). Mere conjecture, speculation, or conclusory statements are insufficient to defeat a motion for summary judgment. *See*, *Baldwin*, 53 F. Supp.3d at 667-68.

The Court is mindful that, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). Accordingly, the Court interprets the Complaint "to raise the strongest arguments that [it] suggest[s]." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Local Civil Rule 56.1(a) of this district requires a party seeking summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. Local Civ. R. 56.1(a). The nonmoving party then must provide a counterstatement with "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party[.]" E.D.N.Y. Local Civ. R. 56.1(b). If the opposing party fails to controvert a fact set forth in the movant's Rule 56.1 statement by citing to admissible evidence that fact is deemed admitted. E.D.N.Y. Local Civ. R. 56.1(c), (d); *See*, *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

*Pro se* litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Thus, when a *pro se* plaintiff fails to comply strictly with the Local Rules (including Civil Rule 56.1), the Court

9

"retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions[.]" *Wali v. One Source Co.*, 678 F. Supp.2d 170, 178 (S.D.N.Y. 2009); S*ee also*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Despite having been notified of the summary judgment procedures, including the requirement to file a Rule 56.1 statement, (*see*, Dkt. Entry No. 77), Plaintiff did not file a formal counterstatement of facts with numbered paragraphs in response to Defendant's Rule 56.1 statement. Plaintiff submitted documents with his statement, including work emails, performance evaluations, and documents relating to his termination. *See*, Dkt. Entry Nos. 68-2 – 68-4. Notwithstanding Plaintiff's violation of Local Civil Rule 56.1, the Court has considered these documents in its assessment of Defendant's motion.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail against Defendant's motion for summary judgment, Plaintiff must satisfy the three-part burden shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Plaintiff must "prove 'by the preponderance of the evidence a prima facie case of discrimination.'" *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981)). "To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Id.* Plaintiff's burden in

establish his prima facie case is minimal. *Id.* (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)).

Second, if the Plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises that places the burden of proof on the Defendant to articulate some "legitimate, non-discriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted). Third, should the Defendant satisfy this burden, "the presumption of discrimination drops out of the picture," and the Plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotation marks omitted).

## DISCUSSION

### I. The Title VII Claims

#### A. Discrimination

Defendant does not dispute that Plaintiff is a member of a protected class or that he suffered an adverse employment action by his termination. However, Defendant contends that Plaintiff cannot show that he was qualified for the position or that he was terminated under circumstances that give rise to an inference of discrimination. Def.'s Mot. at 12-14.

##### 1. Qualification for the Position

To demonstrate qualification for the position, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). The inquiry "should focus on plaintiff's competence and whether he possesses the basic skills necessary for

performance of [the] job." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (internal quotations marks and citation omitted). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery*, 248 F.3d at 92. As part of its program to hire veterans, the Clinic hired Plaintiff and provided him with extensive training for the position. Def.'s 56.1 ¶¶ 3, 13. Plaintiff's employment was conditioned upon his successful completion of a one-year probationary period. *Id.* ¶ 4. Plaintiff was expected to schedule patient appointments accurately, check in patients promptly, and interact courteously and professionally with Clinic staff and patients. *Id.* ¶ 12.

Plaintiff alleges that he was qualified for the position because he satisfied the job prerequisites in the VA's "vacancy announcement[.]" Plf.'s Opp'n at 2. He notes that he is college educated, a disabled veteran, and passed a background check. *Id.* To support that he was competent in the role, Plaintiff cites generally to "164 pages of [e]-mails" located in the ORM's Report of Investigation ("ROI") as evidence that he was "instrumental in intercepting over 70 errors[.]" *Id.* at 2-3. The Court disregards this assertion, as Plaintiff did not submit the ROI to the Court for review. *See*, *Watson v. Grady*, 2015 WL 2168189, at *1 n.2 (S.D.N.Y. May 7, 2015) (noting that Court cannot find material facts in dispute when "the evidence [plaintiff] purports to cite has not been provided to the Court for review"). Plaintiff also states that "91 veterans" who attended the Clinic can attest to his conduct, character and performance, but he did not submit statements from any patients to support his contention that he was qualified for the position. Plf.'s Opp'n at 3.

Defendant maintains that Plaintiff was not qualified because he could not perform his job responsibilities despite receiving corrective feedback. Def.'s Mot. at 12-13. In support, Defendant submitted documents prepared by the Clinic's practitioners and Pierce regarding Plaintiff's job

12

performance.  On February 26, 2013, Matalon emailed Pierce that Plaintiff's competency was "very poor" and he was "sorely inadequate" in his ability to perform "many [of his] required tasks[.]"  Def.'s 56.1 ¶ 32; Exhibit 6 to Pierce Aff. at 41, Dkt. Entry No. 75.  Matalon concluded that Plaintiff "*d[id] not have the necessary skill set to adequately fill this particular position*[.]"  *Id.* (emphasis added).

On March 8, 2013, Pierce rated Plaintiff's work performance "unsatisfactory" in his follow up evaluation form and deemed him incompetent to perform his assigned duties.  Def.'s 56.1 ¶¶ 39, 40, 42; Exhibit 8 to Pierce Aff. at 47, Dkt. Entry No. 75.  On May 23, 2013, Pierce found that Plaintiff's performance remained deficient and reported in his performance appraisal form that he "[n]eed[ed] improvement to be [f]ully successful or better."  Def.'s 56.1 ¶ 53; Exhibit 3 to Pierce Aff. at 32, Dkt. Entry No. 75.  On August 26, 2013, Wolkin emailed Innella that Plaintiff failed to follow scheduling procedures, failed to act on appointment requests in the required time frame, and could not communicate effectively and professionally with staff and patients.  Def.'s 56.1 ¶ 64; Exhibit 13 to Pierce Aff. at 60, Dkt. Entry No. 7.  For all these reasons, Wolkin concluded that Plaintiff was "unable to meet the needs of the VA."  *Id.*  Pierce agreed and did not retain Plaintiff because "he did not have the necessary skill set" for the position.  Def.'s 56.1 ¶¶ 69, 77.

The Court finds that Plaintiff has not shown he was qualified for the position.  Although the Clinic hired Plaintiff, he did not complete his probationary period successfully and repeatedly received negative performance evaluations for the full duration of his employment.  *See*, *Weber v. City of New York*, 973 F. Supp.2d 227, 253 (E.D.N.Y. 2013) ("[A] trail of negative performance reviews can serve as evidence that a plaintiff is not qualified for his position."); *Bailey v. Frederick Goldman, Inc.*, 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006) (finding performance reviews and improvement plans that documented plaintiff's deteriorating performance evidence of

13

plaintiff's lack of qualification). Defendant submitted ample documentary evidence from the Clinic's practitioners and Pierce that reveal Plaintiff was not competent to perform his job responsibilities. Thus, Plaintiff cannot satisfy this element of his prima facie case.

### 2. Inference of Discriminatory Intent

As with the qualifications prong, Plaintiff must meet a "low threshold" to show that he was terminated under circumstances giving rise to an inference of discrimination. *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008). "Inference of discrimination is a flexible [standard] that can be satisfied differently in different factual scenarios." *Sethi v. Narod*, 12 F. Supp.3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks omitted). An inference of discriminatory intent can be drawn from any of the following circumstances:

> "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). No one particular type of proof is required to support an inference of discrimination, but a plaintiff's mere subjective belief that he was discriminated against will not sustain a claim. *See*, *Sethi*, 12 F. Supp.3d at 536.

Although the above list is not exhaustive, Plaintiff has not presented evidence of any of these actions here. Plaintiff alleges that Defendant intended to replace him with two Caucasian females, but he neither identifies these females not provides evidence that Defendant replaced him with Caucasian women following his termination. Compl. at 20. Plaintiff alleges that Defendant discriminated against other minority colleagues who were terminated or transferred, but presents no evidence to support this assertion. *Id.* at 19.

To support a claim of discrimination based on comparators, Plaintiff must show that he was similarly situated in all material respects to the individuals to whom he compares himself. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz*, 609 F.3d at 493–94 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40. Here, Plaintiff fails to identify, and does not know of, any comparators who experienced similar performance problems, but received more favorable treatment than he. *See*, Exhibit 2 to Cho Aff. at 84-85, Dkt. Entry No. 76-1.

In sum, Plaintiff has failed to provide *de minimis* evidence to raise an inference that he was terminated on the basis of his race, national origin, color or sex. The Court need not reach the second and third prongs of the *McDonnell Douglas* burden-shifting analysis as Plaintiff has failed to establish that he was qualified for the position or terminated under circumstances giving rise to an inference of discrimination. Accordingly, the discrimination claims are dismissed.

**B.     Hostile Work Environment**

To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. A plaintiff must show not only that [h]e subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal citation and

quotation marks omitted). The plaintiff must show "that the hostile conduct occurred *because of a protected characteristic*." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (emphasis added).

Plaintiff has failed to present evidence that Defendant discriminated against him based on any protected characteristic to support his hostile work environment claim. Initially, Plaintiff acknowledges that no Clinic worker made discriminatory comments towards him. *See*, Exhibit 3 to Cho Aff. at 118, Dkt. Entry No. 76-1. Plaintiff alleges that Benjamin subjected him to a hostile work environment by harassing and bullying him and spreading "gossip" and "rumors" about his character and performance. Compl. at 7. He also claims that Benjamin accused him improperly of sexual harassment. *Id.* at 8. However, Plaintiff explained in his deposition that Benjamin discriminated against him based on his "different educational background" and for no other reason. Exhibit 2 to Cho Aff. at 79-80, Dkt. Entry No. 76-1. Educational background is not a protected characteristic under Title VII. *See*, *Glasgow v. CNYRTA/Centro, Inc.*, 2018 WL 5660407, at *4 (E.D.N.Y. July 12, 2018). Accordingly, the hostile work environment claim is dismissed.

**C.     Retaliation**

Before bringing a claim in federal court under Title VII, a plaintiff first must file a complaint with the EEOC or an equivalent state agency. 42 U.S.C. § 2000e-(5)(e)(1); *Duplan v. City of New York*, 888 F.3d 612, 614 (2d Cir. 2018) ("Exhaustion is an essential element of Title VII's statutory scheme.") (internal quotation marks omitted). "[C]laims in a civil lawsuit must either have been expressly asserted in the employee's EEO complaint or else be 'reasonably related' to the allegations raised therein." *Elhanafy v. Shinseki*, 2012 WL 2122178, at *12 (E.D.N.Y. June 12, 2012) (quoting *Holtz*, 258 F.3d at 83)).

Plaintiff did not assert a retaliation claim in his EEO Complaint filed with the ORM. Plaintiff's retaliation claim also is not reasonably related to the discrimination claims in his EEO

16

Complaint. Title VII makes it unlawful for an employer to retaliate against any employee for "oppos[ing] any practice made unlawful by Title VII" or "made a charge, testified, assisted, or participated in a Title VII investigation or proceeding." *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). In order to support a claim of retaliation, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 316. (internal quotation marks and citation omitted).

While Plaintiff alleged that he suffered an adverse action by his termination, he did not plead facts in his EEO Complaint that notified the ORM that he engaged in any protected activity. *See*, *O'Hara v. Memorial Sloan-Kettering Cancer Ctr.*, 27 F. App'x 69, 70-71 (2d Cir. 2001) (retaliation claim not reasonably related to discrimination claim because EEOC charge "failed to put the agency on notice that [plaintiff] engaged in the type of protected activity that is the predicate to a retaliation claim"). Consequently, the ORM did not investigate this claim. Plaintiff failed to exhaust his administrative remedies and failed to plead facts in the instant Complaint that he had engaged in any protected activity. Accordingly, the retaliation claim is dismissed.

**II.     The ADA Claim**

The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability . . . in regard to . . . discharge of employees[.]" 42 U.S.C. § 12112(a). Claims of unlawful employment discrimination under the ADA also may be analyzed under the *McDonnell Douglas* burden-shifting framework. *See*, *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *Stolpner v. New York Univ. Lutheran Med. Ctr.*, 2018 WL 4697279, at *21 (E.D.N.Y. Sept. 29, 2018).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: 1) his employer is subject to the ADA; 2) he is disabled within the meaning of the ADA or perceived to be so by his employer; 3) he otherwise was qualified to perform the essential functions of the job with or without reasonable accommodation; and 4) he suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

As a former employee of the federal government, Plaintiff has no remedy for employment discrimination under the ADA. *See*, 42 U.S.C. § 12111(5)(B)(i) (expressly excluding the United States from the definition of ADA "covered" employers). In light of Plaintiff's *pro se* status, the Court construes the Plaintiff's disability discrimination claim to be made pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" *Id.* at § 794(a).

"To survive a motion for summary judgment, a plaintiff bears the burden of establishing a prima face case of discrimination under the [Rehabilitation] Act." *Veldran v. Brennan*, 408 F. Supp.3d 111, 114-115 (E.D.N.Y. 2019). To do so, a plaintiff must show: "(1) [h]e is disabled within the meaning of the Act; (2) [h]e was otherwise qualified to perform the essential functions of h[is] job, with or without reasonable accommodation; (3) [h]e suffered an adverse employment action due solely to h[is] disability; and (4) h[is] employer receives federal financial assistance." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994). Failure to establish one of these elements "is fatal to a claim of employment discrimination." *Reidy v. Runyon*, 971 F. Supp. 760, 768 (E.D.N.Y. 1997).

Plaintiff has failed to establish that he is "disabled" within the meaning of the Act. In determining whether a plaintiff is disabled, the Second Circuit has "applied the three-step approach taken by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624 (1998)." *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (citing *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998)). Under this approach, Plaintiff must: (1) show that he suffers from a physical or mental impairment; (2) identify the activity that is impaired and establish that it constitutes a major life activity; and (3) show that the impairment substantially limits said major life activity. *Id.* The Supreme Court has clarified that the major life activity must be "of central importance to daily life." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 197 (2002).

Plaintiff claims that he is mentally disabled because he suffers from depression, stress, migraines, and headaches. *See*, Exhibit 6 to Cho Aff. at 134-136, Dkt. Entry No. 76-1. However, Plaintiff does not identify any major life activity that is impaired by these conditions. In fact, he confirms that he has "no limitation" with respect to his mental conditions and asserts his "mental state of mind doesn't affec[t] [his] ability to work or to learn new pro[cedures]." *Id.* at 135-36. Accordingly, Plaintiff has failed to demonstrate that he is "disabled" under the Rehabilitation Act and his disability discrimination claim is dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted and this action is dismissed in its entirety, with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2021

/s/
_____
DORA L. IRIZARRY
United States District Judge
